IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDREW McCULLOUGH-EL           *

Plaintiff                      *

v                              *       Civil Action No. JFM-11-3217

GREGG HERSHBERGER, et al.      *

Defendants                     *
                              ***

### MEMORANDUM

Pending is defendants' unopposed motion to dismiss or for summary judgment.[1] ECF No. 21. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reason set forth below, defendants' motion, construed as a motion for summary judgment, will be granted and the case will be closed.

### Background

Plaintiff Andrew McCullough-El (McCullough) alleges he was denied access to proper medical treatment while he was confined to Roxbury Correctional Institution (RCI) for an allergic reaction to peanuts. He claims that Officer Grove sent him away from the infirmary even though he informed the officer he was experiencing an allergic reaction and that such conduct could have resulted in his death. He states he filed an administrative remedy procedure request (ARP) regarding Grove's actions and Lt. Alexander attempted to have McCullough withdraw the complaint. When McCullough would not agree to withdraw the ARP against Grove, he claims Alexander conspired with Nurse King to have him transferred to another institution and to confiscate his legal materials. ECF No. 4 at p. 4.

---

[1] Plaintiff was advised of his right to file an opposition to the motion and of the consequences of failing to do so. ECF No. 22. Although he was granted an extension of time to file the opposition, he has failed to file anything further in this case. ECF No. 25.

On November 1, 2011, McCullough was informed he would be transferred from RCI to Eastern Correctional Institution (ECI). He claims RCI officials improperly confiscated his legal materials by refusing to send documents out at the institution's expense. McCullough asserts that Officer Darden told him he had to sign a form agreeing to have money withdrawn from his account to have the documents mailed out of the institution. McCullough refused to sign the form. Additionally, RCI staff denied McCullough's request to mail his "pending legal materials" to Division of Correction (DOC) headquarters, suggesting instead that he mail it to family members. McCullough advised he had been locked up for 24 years and had no outside address to which the documents could be sent. The dispute was ended when Captain Creek told McCullough to stand up and place his hands on a wall. After McCullough complied, he claims Creek twisted his left arm behind his back injuring his shoulder. Upon being handcuffed, McCullough alleges he was slammed to the floor. As a result, McCullough claims his hand, back and brain were injured. He seeks both monetary and injunctive relief. ECF No. 4 at pp. 5 – 7.

Defendants assert that on October 14, 2011, McCullough was called to medical several times, but did not report in a timely manner choosing instead to go back to his housing unit before reporting for the medical appointment. When he did show up for his appointment, Officer Grove told him to go back to his housing unit because the pharmacist with whom McCullough had the appointment had left the institution. A make-up appointment was arranged following the incident. ECF No. 21 at Ex. 1, pp. 3 – 5. During an interview of McCullough on October 27, 2011, for purposes of investigating his ARP, Lt. Alexander admits he asked if McCullough wanted to withdraw his complaint against Grove "because [the] complaint appeared more focused on the medical department and the fact that the pharmacist was unavailable to see him

2

when he reported to the dispensary." *Id*.  McCullough declined the offer and stated he wanted to pursue his claim because Grove yelled at him. *Id*. at Ex. 3, p. 2.   The ARP was dismissed. *Id*. at Ex. 1.

Alexander denies conspiring to have McCullough's property confiscated and denies conspiring to have him transferred.  *Id*. at Ex. 3, p. 2.  Frances Geist, McCullough's case management supervisor, states that every inmate at RCI is placed on a transfer list and is generally subject to transfer.  McCullough was randomly selected for a transfer to ECI in accordance with inmate transfer procedures.  *Id*. at Ex. 4. Pursuant to his impending transfer, McCullough was permitted to pack three boxes to be transported with him to ECI.   After he packed the allotted three boxes, McCullough had excess property weighing 52 pounds.  He was informed he could mail the excess property to ECI at his own expense, but he refused to sign a money voucher form to pay for it.  *Id*. at Ex. 5.  Ultimately, McCullough's excess property was mailed to ECI at RCI's expense and was received by McCullough on January 25, 2012. *Id*. at Ex. 6.

Captain Creek asserts that on November 1, 2011, he reported to the receiving area of RCI because McCullough had refused to submit to a strip search prior to his transfer to ECI and also refused to cooperate with the transfer itself.  The transportation unit left McCullough at RCI and, because of his refusals, he was pat-searched, handcuffed, and taken to segregation without further incident.  The next morning McCullough was moved to administrative segregation to await transport to ECI.  Creek maintains that force was not utilized throughout the entire incident.  ECF No. 21 at Ex. 7.[2]  The Internal Investigation Unit (IIU) for the Department of Public Safety and Correctional Services investigated McCullough's claim of excessive force. The investigation confirmed that McCullough was uncooperative with the strip search and the

---

[2] *See also* ECF No. 21 at Ex. 8

transfer and that he was pat searched and moved to segregation without incident. *Id*. at Ex. 9. McCullough was seen by healthcare providers on November 1 and 2, 2011, for purposes of dispensing his prescribed medications and he did not report injuries during either visit. *Id*. at pp. 8, 15, and 17. In addition, McCullough was photographed on November 2, 2011, before his transfer to ECI and no injuries were noted. *Id*.

It was not until McCullough reached ECI on November 2, 2011, that he reported a back injury resulting from an altercation with correctional staff at RCI. ECF No. 21 at Ex. 10. He again complained of back pain on November 4, 2011, but the healthcare provider could find no signs of injury and noted McCullough walked with a steady gait. *Id*. at p. 4. On November 11, 2011, McCullough began complaining of lower back pain and pain to his left shoulder. *Id*. at p. 5. An x-ray was ordered on November 18, 2011; the results showed McCullough suffers from mild degenerative joint disease with osteophytes and arthritis. *Id*. at pp. 13 and 16. Treatment included education of McCullough about what to expect from his condition and use of anti-inflammatories. *Id.* at p. 16.

**Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce*

*v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Defendants assert, and McCullough fails to refute, that his transfer was not retaliatory but a result of random selection pursuant to neutral prison policy.  Additionally, the claim fails because McCullough has offered no evidence that his transfer to ECI was detrimental to him. Defendants are entitled to summary judgment in their favor.

## Legal Materials

Prisoners have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U. S. 817, 821 (1977).  However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.S. at 355.  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

The undisputed record establishes that McCullough was only temporarily deprived of

some of his property because he refused to pay to have it shipped to ECI. McCullough has offered no evidence that he suffered an actual injury as a result of the temporary deprivation and, to the extent that evidence exists, the evidence establishes the deprivation was due to McCullough's actions, not the actions of defendants. Defendants are thus entitled to summary judgment on this claim.

## Denial of Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants assert, and McCullough does not dispute, that any delay in receiving medical care at RCI was due to McCullough's decision to go back to his housing unit before reporting for his appointment. His delayed response to the request to report to medical meant that the pharmacist was forced to leave without seeing him in order to honor other commitments. There is no evidence that sending McCullough away from the medical unit was the result of deliberate

7

indifference to a serious medical need. Defendants are entitled to summary judgment on this claim.

## Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

The undisputed record establishes that no force was used against McCullough when he refused a strip search and refused to cooperate with his transfer. McCullough was restrained and subjected to a pat down search before he was removed to segregation; such contact is within the accepted norm of physical contact between prisoners and correctional officers. Defendants are entitled to summary judgment on this claim.


   ___August 16, 2012___                           ____/s/_____
Date                                                                    J. Frederick Motz
                                                                        United States District Judge